# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

### No. ACM S32670

————————————

### UNITED STATES
*Appellee*

**v.**

### Rodger L. SHELTON, Jr.
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 28 October 2021

————————————

*Military Judge:* Thomas J. Alford.

*Sentence:* Sentence adjudged 17 August 2020[1] by SpCM convened at Barksdale Air Force Base, Louisiana. Sentence entered by military judge on 22 September 2020: Bad-conduct discharge, confinement for 45 days, reduction to E-1, and a reprimand.

*For Appellant:* Major Christopher A. Monson, USAF.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Major John P. Patera, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, LEWIS, and RAMÍREZ, *Appellate Military Judges*.

Judge RAMÍREZ delivered the opinion of the court, in which Chief Judge JOHNSON and Senior Judge LEWIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

---

[1] Appellant's Assignments of Error and the Government's Answer both reference 22 September 2020; however, the trial transcript makes clear that the court-martial took place on 17 August 2020.

RAMÍREZ, Judge:

A military judge sitting as a special court-martial convicted Appellant, in accordance with his pleas and pursuant to a plea agreement, of one charge and two specifications of assault consummated by a battery,[2] in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928.[3]

The plea agreement contemplated a confinement sentencing range of 30–90 days for each specification and required that any periods of adjudged confinement run concurrently. The military judge sentenced Appellant to a bad-conduct discharge, confinement for 45 days, reduction to the grade of E-1, and a reprimand.[4] The convening authority took no action on the findings or sentence.

Appellant raises two issues on appeal: (1) whether trial counsel made inappropriate sentencing arguments based on the victims' unsworn statements, and (2) whether Appellant was punished twice for the same offense.

We find no error that has materially prejudiced Appellant's substantial rights and affirm the findings and sentence.

## I. BACKGROUND

Appellant, who had served in the Air Force for four years at the time of his court-martial, was stationed at Barksdale Air Force Base (AFB), Louisiana. Victim VG was also stationed at Barksdale AFB, but had never met Appellant or interacted with him. Victim ES was a member of Appellant's unit but had only ever interacted with him in a professional capacity.

On 24 October 2019, between 0700 and 0800, Appellant was on shift and walked into a flight kitchen on Barksdale AFB. VG was waiting in line at the flight kitchen and Appellant was in line behind her. Moments later, Appellant intentionally touched VG on the underside of her right buttock, partially between her buttocks. VG did not initially confront Appellant, thinking the

---

[2] In accordance with the plea agreement, a charge and two specifications of abusive sexual contact, in violation of Article 120, UCMJ, 10 U.S.C. § 920, were withdrawn and dismissed with prejudice.

[3] All offenses of which Appellant was convicted occurred after 1 January 2019. Accordingly, unless otherwise noted, references to the UCMJ and the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*).

[4] The military judge sentenced Appellant to 30 days of confinement for Specification 1 and 45 days of confinement for Specification 2. Pursuant to the plea agreement, these periods of confinement ran concurrently.

touching might have been accidental. Less than a minute later, however, Appellant again intentionally touched VG in the same manner. This time, VG confronted Appellant. She asked him, "What are you doing?" to which Appellant smirked at her and replied that he was "just chilling." Appellant's unwanted touching caused VG to leave the flight kitchen and report the incident to her supervisor. VG subsequently identified Appellant as part of a law enforcement photo lineup. On 3 March 2020, Appellant's commander issued Appellant a Letter of Reprimand (LOR). The LOR was for touching VG's buttocks and for an earlier incident in August 2019 in which two "underage" girls alleged Appellant touched their buttocks, without their consent, in a department store.

On the morning of 5 March 2020, ES and another Airman were performing maintenance on an air conditioning unit. Appellant was in the area and offered to help. Although ES had previously interacted with Appellant in a professional capacity, she did not know him well. While working on the air conditioning unit, Appellant put his hand on ES's left buttock, over her clothing, and dragged his hand across her buttock from the middle of her buttock to her hip. ES initially thought the touching might have been accidental. However, Appellant touched her buttocks a second time with a cupped hand in the same manner as the first touching. Afterward, ES left the area and reported the incident to her supervisor.

## II. DISCUSSION

### A. Trial Counsel's Sentencing Argument

Appellant argues that trial counsel's discussion of unsworn victim impact statements during sentencing arguments was improper and caused material prejudice to him. Appellant notes that neither victim testified and that the Government did not offer any evidence of victim impact at trial. Appellant's position is that because this court has established that unsworn victim impact statements are not evidence, trial counsel could not rely on them.[5]

### 1. Additional Background

After the Government rested in the presentencing phase, the military judge received a written unsworn statement from each victim. First, the special victims' counsel (SVC) for ES provided the court-martial with a written unsworn statement from ES. Neither trial counsel nor trial defense counsel objected to the military judge considering ES's written unsworn statement, which was

---

[5] Appellant raised this assignment of error on 1 April 2021—prior to our superior court addressing this issue on 26 April 2021. *See United States v. Tyler*, 81 M.J. 108 (C.A.A.F. 2021).

marked as "Court Exhibit 1." ES, through her SVC, then moved to admit Court Exhibit 1. Without referencing a specific military rule of evidence, the military judge stated:

> Without objection, Court Exhibit 1 is admitted. To the extent that an unsworn statement is evidence. It is certainly something before a fact finder to be considered. Whether or not it is actually evidence, not a clear question; but I will consider it absent an objection.

Next, VG, through her SVC, provided the court-martial with VG's written unsworn statement, marked as Court Exhibit 2, and also asked to read the statement orally in open court. The military judge asked whether there was "[a]ny objection to [his] consideration of the Court Exhibit 2," the unsworn statement from VG. Again, neither trial counsel nor trial defense counsel objected. The military judge then stated: "All right, I will consider this unsworn statement." He asked whether there was any objection to the SVC reading the statement out loud in open court; trial counsel and trial defense counsel stated that they had no objections. VG's SVC then read the statement out loud.

During sentencing argument, trial counsel made the following statements that are being objected to for the first time on appeal:

> Your Honor, if you are still on the fence about whether or not a bad conduct discharge is appropriate here; the [G]overnment urges you to consider the victims in this case and the impact that his crimes have had on them. They have to live with what [Appellant] did to them on the job. You heard from [VG]; she cries when she imagines what happened. She was crying in the bathroom at work, Your Honor. She said that she is now on guard in public places. She doesn't trust strangers as much anymore. Because [Appellant] violated the idea that all wingmen can be trusted.
>
> You heard from [ES] as well. In that court exhibit that has been submitted, she talks about how [Appellant's] decision to drag his hand across her buttock twice made her feel disgusting. . . . It made her feel uncomfortable in her own skin. It damaged her relationship with her husband; and she says that she is still not okay. Your Honor, the victims have to live with what [Appellant] did to them on the job. So [Appellant] should also have to live with what he did to them on the job, in the form of a bad conduct discharge.

**2. Law**

"[E]ither party [in a court-martial] may comment on properly admitted unsworn victim statements." *United States v. Tyler*, 81 M.J. 108, 113 (C.A.A.F. 2021).

The issue of "improper argument is a question of law that we review de novo." *United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F. 2011) (citation omitted). "While the military judge is the gatekeeper for unsworn victim statements, an accused nonetheless has a duty to state the specific ground for objection in order to preserve a claim of error on appeal." *Tyler*, 81 M.J. at 113.

If the Defense does not object to a sentencing argument by trial counsel, we review the issue for plain error. *Marsh*, 70 M.J. at 104 (citing *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007)). To establish plain error, an appellant "must prove the existence of error, that the error was plain or obvious, and that the error resulted in material prejudice to a substantial right." *Id*. at 106 (citing *Erickson*, 65 M.J. at 223).

"When the issue of plain error involves a judge-alone trial, an appellant faces a particularly high hurdle." *United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000). This is because a "military judge is presumed to know the law and apply it correctly, [and] is presumed capable of filtering out inadmissible evidence . . . ." *Id*. (citation omitted.) Therefore, "plain error before a military judge sitting alone is rare indeed." *Id*. (quoting *United States v. Raya*, 45 M.J. 251, 253 (C.A.A.F. 1996)).

"As all three prongs must be satisfied in order to find plain error, the failure to establish any one of the prongs is fatal to a plain error claim." *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006).

"In 2013, Congress revised presentencing procedures . . . to give a victim the right to be reasonably heard at a sentencing hearing concerning the offense of which he or she is the victim." *Tyler*, 81 M.J. at 111 (internal quotation marks, alterations, and citation omitted). In any noncapital case, the victim has a right to make either a sworn or unsworn statement during sentencing. *Id*. To distinguish the sentencing procedures, our superior court, the United States Court of Appeals for the Armed Forces (CAAF), has explained that "R.C.M. 1001A[6] 'belongs to the victim, and is separate and distinct from the [G]overnment's right to offer victim impact statements in aggravation, under R.C.M. 1001(b)(4).'" *Id*. at 112 (quoting *United States v. Barker*, 77 M.J. 377, 378 (C.A.A.F. 2018)).

---

[6] Previously, the rules regarding a victim's right to be reasonably heard were contained in R.C.M. 1001A, *Manual for Courts-Martial, United States* (2016 ed.). However, those rules are now contained in R.C.M. 1001(c). *See* 2019 *MCM*, App. 15, at A15-18 ("R.C.M. 1001(c) is new and incorporates R.C.M. 1001A of the MCM (2016 edition).").

In sentencing proceedings, the right of a victim to make an unsworn statement is procedurally similar to an accused's right to make an unsworn statement: "Like an accused, a victim may, personally or through counsel, make an unsworn statement orally, in writing, or both, and may not be cross-examined or examined by the court upon it." *Id.* (citation omitted). "This non-witness designation strips an unsworn victim statement of its testimonial status, which removes it from the purview of the Military Rules of Evidence." *Id.* In short, "unsworn victim statements are not made under oath, and are thus not evidence." *Id.* Nonetheless, "the military judge has an obligation to ensure the content of a victim's unsworn statement comports with the parameters of victim impact or mitigation." *Id.*

"After introduction of matters relating to sentence under [R.C.M. 1001], counsel for the prosecution and defense may argue for an appropriate sentence." R.C.M. 1001(h). "Presentencing argument commenting on the unsworn victim statement asks the military judge or the panel to sentence an accused based upon a 'matter[ ]' already properly before them." *Tyler*, 81 M.J. at 113 (alteration in original). A "victim's right to make an unsworn statement is procedurally akin to the accused's right of allocution," the latter of which is subject to comment during presentencing argument. *Id.* Accordingly, the CAAF held in *Tyler* that "either party may comment on properly admitted unsworn victim statements." *Id.*

### 3. Analysis

Here, four things are undisputed: (1) the victims' unsworn statements were offered and accepted; (2) the Defense did not object to the statements; (3) the military judge considered them; and (4) trial counsel relied on them in the Government's sentencing argument.

It would be easy to simply find no prejudicial error as this was a judge-alone sentencing hearing where we presume the military judge to know the law and apply it correctly. We do not presume clairvoyance on the part of military judges, and the CAAF's *Tyler* opinion had not yet been decided.

Nonetheless, we find no error because unlike the CAAF's previous opinion on this issue,[7] here, the victims' unsworn statements were offered without objection from the Defense and accepted as court exhibits. The military judge's

---

[7] *United States v. Hamilton*, 78 M.J. 335 (C.A.A.F. 2019). In *Hamilton*, the military judge admitted—over defense objection—victim impact statements offered as prosecution exhibits and authenticated by members of law enforcement. *Id.* at 338. This was done absent any indication either that the victims intended their statements to be used in this particular prosecution or that a "designee" was appropriate under the rule. *Id.* at 339. On appeal, the CAAF held that the statements were not properly admitted due to failure to comply with R.C.M. 1001A. *Id.* at 342.

consideration of the victims' unsworn statements as court exhibits was not clear or obvious error, as doing so complied with R.C.M. 1001(c). Moreover, we decline to find plain error in trial counsel's sentencing argument on this issue. Trial counsel's ability to comment on the victims' unsworn statements was founded in R.C.M. 1001(h) and its appropriateness was subsequently confirmed by the CAAF. *See Tyler*, 81 M.J. at 113. Therefore, trial counsel was permitted to rely on them in sentencing argument and the military judge was permitted to consider them. As such, there is no error.

In the absence of error, Appellant's claim fails.

## B. Whether Appellant was Punished Twice for the Same Offense

Appellant alleges that he was improperly punished twice for the same offense by receiving two reprimands for the same underlying conduct. According to Appellant, there is no discernable difference between a reprimand contained in an LOR and a reprimand contained as part of a court-martial sentence as they both result in the same punishment. Appellant further argues that the military judge's failure to provide *Pierce* credit[8] constitutes plain error.

### 1. Additional Background

As explained above, Appellant received an LOR on 3 March 2020 for touching VG's buttocks and for another incident in which two underage girls alleged Appellant touched their buttocks without their consent. Two days after receiving the LOR, Appellant assaulted ES. Charges were subsequently referred against Appellant for his conduct toward VG and ES.

The LOR at issue was part of the Government's sentencing package, identified as Prosecution Exhibit 2. After trial counsel offered the LOR into evidence, the military judge asked whether the Defense had any objection to admission of the LOR. Trial defense counsel replied, "No, Your Honor." However, even prior to this, the admission of the LOR had been addressed in the stipulation of fact. In paragraph 14 of the stipulation of fact, Appellant stipulated to its foundation, relevance, and admissibility if offered during sentencing.

Appellant also received a reprimand as part of the adjudged sentence from the military judge. The exact wording of this reprimand appeared in the Convening Authority's Decision on Action memorandum, dated 11 September 2020; the reprimand addressed Appellant's assaults of VG and ES. Appellant did not file a post-trial motion related to the language of the reprimand.

### 2. Law and Analysis

---

[8] *United States v. Pierce*, 27 M.J. 367, 369 (C.M.A. 1989) (requiring an accused be given complete credit for any nonjudicial punishment previously imposed for the same offense).

Acknowledging this court's opinion in *United States v. Shamess*, No. ACM 39434, 2019 CCA LEXIS 339 (A.F. Ct. Crim. App. 23 Aug. 2019) (unpub op.), Appellant does not attack the admissibility of the LOR for the same underlying conduct. Instead, Appellant contends that it was plain error for the military judge not to provide him with *Pierce* credit for the prior LOR because that LOR and the reprimand awarded at the court-martial both discussed his assault of VG.

Prior to his court-martial, Appellant received an LOR for assaulting VG, but also for several other issues for which he was not prosecuted by military authorities. The reprimand Appellant received as part of his sentence only addressed the crimes of which he was convicted.

The reprimand imposed as part of Appellant's sentence was a lawful type of punishment that the military judge was permitted to adjudge; Appellant does not provide any law to the contrary. We decline Appellant's request to extend the principles of *Pierce* credit to administrative actions. *See, e.g.*, *Shamess*, unpub. op. at *19–20 ("The CAAF has never extended *Pierce* to administrative actions not governed by the UCMJ, and *Pierce's* prohibition on double *punishment* pursuant to the UCMJ for the same conduct does not apply to Appellant's LOR which is an administrative action, not a punishment."). Accordingly, we deny relief.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court